UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WAKEELAH A. COCROFT,  )<br>    Plaintiff  )<br>  )<br>v.  )<br>  )<br>JEREMY SMITH,  )<br>    Defendant  ) | Docket No. 10-CV-40257-TSH |

## PLAINTIFF'S STATEMENT OF DISPUTED FACTS
### (Local Rule 56.1)

Plaintiff Wakeelah Cocroft respectfully submits this Statement of Disputed Facts in response to the proposed Statement of Undisputed Facts submitted by defendant Jeremy Smith. Below, Cocroft reproduces the numbered paragraphs appearing in Smith's submission, together with subpagraphs and record citations concerning material disputes raised by Cocroft.

1. On December 29, 2008, at approximately 7:00 a.m., Plaintiff was riding as a passenger in an automobile operated by her sister, Clytheia Mwangi, on Park Avenue in Worcester. (Plaintiff's Complaint, ¶ 5.)

**Not Disputed.**

2. As the automobile in which Plaintiff was traveling passed in front of Officer Smith), he activated his lights and pulled behind the vehicle as it made a right-hand turn into a gas station. (Plaintiff's Complaint, ¶ 6; Deposition Transcript of Officer Smith, Ex. 1, 43: 17-23.)

**Not Disputed.**

3. Officer Smith approached the vehicle and advised Ms. Mwangi that she had been speeding and asked to see her license and registration. (Plaintiff's Complaint, ¶ 8.)

**Disputed.**

1

    3a.    Smith did more than "advise and ask"; "he screamed" at Mwangi: "He thrust the speedometer into the window and screamed at her. He seemed very hostile, very aggressive" Exhibit A -Cocroft Dep. 57:24, 58:3-6.[1]

    3b.    Cocroft advised Smith, "You don't have to speak to my sister in that manner." Cocroft Dep. 60:22-23.

    3c.    Smith then told Cocroft, "I will speak to you if I have something to say to you." Cocroft Dep. 63:4-5.

    3d.    Mwangi complied with Smith's request and provided her license and registration. Cocroft Dep. 63:10-14.

    3e.    Smith took the papers and walked back to his vehicle. Cocroft Dep. 64:16-18.

4.    When Officer Smith went back to his cruiser to write the citation, the Plaintiff exited the automobile and began to pump gas. (Plaintiff's Complaint, ¶ 12, Ex. 1, 45:22-24; 46:1-6.)

**Disputed that Cocroft immediately pumped gas**.

    4a.    Before being pulled over by Officer Smith, the plaintiff and her sister knew they needed gas. Cocroft Dep. 65:7-11.

    4b.    Mwangi and Cocroft agreed, because Mwangi was ordered by Smith to stay in the car, that Cocroft would purchase the gas. Cocroft Dep. 64:20-21.

---

[1] Citations to "[name] Dep." refer to the transcripts of depositions taken in connection with this case. Relevant portions of those transcripts are being submitted as Exhibits A, C, and D of the Affidavit of Beverly B. Chorbajian, filed with this pleading.

    4c.    Cocroft entered the Mobil store and paid $5 for gas. Cocroft Dep. 65:15-23.

    4d.    Cocroft returned to the vehicle, placed the receipt in the car, proceeded to the pump, and put the nozzle into the tank. Cocroft Dep. 66:3-17.

5.    Officer Smith exited his cruiser and told the Plaintiff to get back in the vehicle.
(Plaintiff's Complaint, ¶ 12.)

**Disputed. This statement is misleading; it omits any reference to Smith's demeanor. Smith approached Cocroft with hostility and aggression.**

    5a.    Cocroft heard Smith screaming behind her. Cocroft Dep. 67:1-5

    5b.    Smith was screaming, "I thought I told you to stay in the car." Cocroft Dep. 67:11-14.

    5c.    Cocroft responded, "I didn't know you were speaking to me," and "You have no right to speak to me in that manner." Cocroft Dep. 67:21-24.

    5d.    Defendant Smith "came toward [her] . . . in a very aggressive manner" saying the same thing. Trial Tr.[2] 131:21-23.

    5e.    Smith's manner was "aggressive" and "hostile"; "he was screaming and yelling." Cocroft Dep. 68:4-5.

6.    Officer Smith advised Plaintiff several times to get back in the vehicle, or she would be subject to arrest. (Exhibit 1, 47:8-10; Plaintiff's Complaint, ¶ 14.)

**Disputed.**

---

[2] Citations to "Trial Tr." refer to the transcript of Cocroft's state criminal trial in Worcester District Court, on January 22, 2009. It is being submitted as Exhibit B of the Affidavit of Beverly B. Chorbajian, filed with this pleading.

    6a.    Smith did not tell Cocroft "several times" to get back in the vehicle; he told her once. Mwangi Dep. 27:4-10

    6b.    Cocroft said, "You don't have to talk to me in that manner. I have rights." Cocroft Dep. 68:14-16.

    6c.    Smith responded, "If you say another word I'm going to arrest you." Trial Tr. 168:1-2; Cocroft Dep. 68:17-18.

    6d.    Cocroft repeated, "You don't have to talk to me in that manner." Cocroft Dep. 69:18-19.

    6e.    Smith has testified that he arrested Cocroft based on "those words" she spoke after being told that she would be arrested if she said another word. Trial Tr. 82.

7.    Plaintiff objected to the manner in which Officer Smith was speaking to her, told him that he had no right to speak to her that way, stated that she has rights, and continued to argue with Officer Smith. (Plaintiff's Complaint, ¶ 14; Ex. 1, 47:12-18.)

**Disputed. Cocroft did not "argue" with Smith. She (a) asserted that she had rights and (b) requested that Smith address the two women without belligerence and hostility.**

    7a.    Cocroft was talking – not arguing. See points 5c, 6b and 6c above.

8.    As Officer Smith approached Plaintiff to arrest her, she moved to get into the car. Officer Smith took hold of her right arm and told her she was under arrest.   Plaintiff's Complaint, ¶ 12; Ex. 1, 48: 5-9, 23-24, 49:1.

**Disputed.**

    8a.    The surveillance video unequivocally refutes the assertion that Cocroft "moved to get into the car" only after Smith approached her. After

4

> Smith is seen yelling and gesticulating toward Cocroft, he can be seen walking back to his cruiser. At that moment, Cocroft opens the passenger door of Mwangi's vehicle, in compliance with his order to get in the car. 12/29/2007 Video at 7:01:52 to 7:02:00.[3]

8b. Cocroft turned to get back into her sister's vehicle to comply with Smith's command to get back in the car. Cocroft Dep. 69:3-15; 12/29/2007 Video at 7:01:59.

8c. Smith then turned around and moved quickly toward Cocroft. 12/29/2007 Video at 7:01:59 to 7:02:03.

8d. Smith did not tell Cocroft that she was under arrest. Cocroft Dep. 72:5-7.

8e. Smith said nothing at that time. Cocroft Dep. 72:9-10.

8f. As Smith approached Cocroft from the rear, she gave no indication that she was aware of his presence, let alone disobeying a command. Yet Smith grabbed her from behind and threw her to the ground with great force. Trial Tr. 154:12-14.

9. Plaintiff fought arrest by raising her legs, tucking in her arms, and making Officer Smith support her weight. When Plaintiff put her legs down, Officer Smith used an arm bar technique to overcome her resistance and bring Plaintiff to the ground, lying facedown, so that he could handcuff her wrists behind her back. (Plaintiff's Complaint, ¶ 15; Ex. 1, 49:3-11, 55:17-24, 56:1-12.)

**Disputed.**

---

[3] Citations to "12/29/2007 Video" refer to the surveillance video of the incident at issue in this case. It is being submitted as Exhibit F of the Affidavit of Beverly B. Chorbajian, filed with this pleading.

9a. Cocroft had opened the passenger side door and had placed one foot inside. Cocroft Dep. 70:3-10.

9b. Smith then pulled Cocroft from behind, pulling both of her shoulders. Cocroft Dep. 70-71; 12/29/2007 Video at 7:02:03 to 7:02:10.

9c. Cocroft lost her balance. Cocroft Dep. 71:19.

9d. Smith did not say "stop resisting" at that time. Cocroft Dep. 72:8-10.

9e. Smith pulled Cocroft back and "threw [her] to the other side of the island on the ground." Cocroft Dep. 72:20-22.

9f. All Cocroft said was, "What are you doing?" Cocroft Dep. 72:12-19.

9g. Smith threw her to the ground and scraped her face against the cement. Cocroft Dep. 73:17-18.

9h. Smith pulled both of Cocroft's hands behind her back and pushed his knee into her back. Trial Tr. 134:4-7.

9i. Smith then handcuffed Cocroft. Cocroft Dep. 74:21.

9j. With Smith's knee in her back, Cocroft could not breathe. Cocroft Dep. 74:21-23.

9k. Smith stayed on Cocroft's "back for several minutes even after I told him I

couldn't breathe." Cocroft Dep. 75:10-12.

9l. Cocroft did not engage in any action to avoid being handcuffed. Cocroft Dep. 75:4-6.

10. Officer Smith placed his knee on Plaintiff's shoulder and pulled Plaintiff's arms behind her back to place handcuffs on her. (Plaintiff's Complaint, ¶ 15;

6

Ex. 1, 58:1-14.)

**Disputed that Smith's knee was only on Cocroft's shoulder. It was squarely on her back.**

    10a.   Smith pulled both of Cocroft's hands behind her back and pushed his knee into her back. Trial Tr. 134: 4-13.

    10b.   Smith's knee was in Cocroft's back and she couldn't breathe. Cocroft Dep. 74:21-23.

    10c.   Smith stayed on Cocroft's "back for several minutes even after [she] told him [she] couldn't breathe." Cocroft Dep. 75:10-12.

    10d.   Smith admitted that he kept his knee on Cocroft for three to four minutes after he handcuffed her. Smith Dep. 75:14 to 76:3.

    10e.   Smith then handcuffed Cocroft. Cocroft Dep. 74:21.

11.   Plaintiff continued to dig her nails into Officer Smith's hands while he was handcuffing her. (Exhibit 1, 49:11-12.)

**Disputed.**

    11a.   Cocroft neither dug her fingernails into Smith's hands nor grabbed his hands. Cocroft Dep. 76:2-7.

    11b.   Smith has conceded that he did not seek medical attention and that Cocroft's nails did not even break his skin. Smith Dep. 49:16-22.

12.   Plaintiff became very upset when Officer Smith began to place her under arrest.
(Deposition Transcript of Plaintiff, attached hereto as Ex. 2, 72:12-16.)

**Not Disputed that Cocroft was very upset but Disputed that "very upset" is a complete description of Cocroft's state of mind:**

12a.   Cocroft was shocked by defendant Smith's conduct. She testified, "I was taken aback because I couldn't understand how just because I say something, he could arrest me. I thought I had the right to speak my mind. I thought I had freedom of speech." Trial Tr. 131:13-18.

13.   Plaintiff stated that she became hysterical as Officer Smith pulled her arms behind her   back to handcuff her. (Ex. 2, 74:15-21.)

**Disputed. Smith pulled her arms behind her back at the same time that:**

13a.   Cocroft's face was scraped up against the cold cement. She felt pain in her face, the cold ground on her ear. Cocroft Dep. 74:10-13.

13b.   Smith "yanked [Cocroft's] right arm behind [her]," and she "felt pain in [her] arm." Smith then "put [her] other arm at [her] back." Cocroft Dep. 74:15-18.

13c.   Smith then pushed his knee in Cocroft's back and impeded her breathing. Cocroft Dep. 74:21-23.

14.   After Officer Smith placed the Plaintiff on the ground to effectuate her arrest, Plaintiff continued to move her face back and forth against the pavement. (Exhibit 2, 76:16-21.)

**Disputed.**

14a.   Contrary to Smith's suggestion, Cocroft did not resist him with her face.

14b.   Cocroft's face was scraped and she "instinctively" tried to keep her face off the ground and thus kept moving it back and forth." Cocroft Dep. 76:18-21.

15.   Plaintiff stated that Officer Smith "pushed his knee into [her] back and

8

impeded [her] breathing," but she did not lose consciousness. (Exhibit 2, 74:21-23, 80:10-13.)

**Not disputed.**

16. Officer Smith denied hearing Plaintiff say anything about not being able to breathe, and denied that he had his knee on Plaintiff's back; rather, he had his knee on Plaintiff's shoulder in order to hold her down to handcuff her. (Exhibit 1, 50:15-17, 54: 1-6, 58: 10-14.)

**Disputed.**

> 16a. Smith pulled both of Cocroft's hands behind her back and pushed his knee into her back. Trial Tr. 134:4-13.
>
> 16b. Smith's knee was in Cocroft's back and she couldn't breathe. Cocroft Dep. 74:21-23.
>
> 16c. Cocroft told Smith she couldn't breathe. Trial Tr. 134:12-15; Cocroft Dep. 80:5-6.
>
> 16d. Smith's knee was on Cocroft's back. Cocroft Dep. 74:22-23.
>
> 16e. Smith stayed on Cocroft's "back for several minutes even after [she] told him [she] couldn't breathe." Cocroft Dep. 75:10-12.

17. Officer Smith testified that he was also required to restrain Plaintiff on the ground until assistance arrived because he was by himself, he had just placed Plaintiff under arrest and Plaintiff's sister was agitated and outside the vehicle and he had to repeatedly tell Plaintiff's sister to sit back down. (Exhibit 1, 58: 18-24, 59:1-8.)

**Disputed. Defendant Smith's actions were not "required" and were in direct contravention of police policy.**

> 17a. The Worcester Police Department Use of Force Policy in effect at the time of the incident states: "Once the prisoner is restrained, the officer

9

      shall insure that the prisoner can adequately breath by placing him on his side or back (if lying down), or by placing him in a sitting position or other position that will allow him to breath freely. No subject is to be placed face down in the prone position. Exhibit E, attached to the Affidavit of Beverly B. Chorbajian "Worcester Police Dept. Policy and Procedure Policy 400.1 – Date Effective 13 April 2007 – Handcuffs and Restraints Guidelines Policy, p. 1 of 4.

17b. While Smith was applying force to Cocroft, her sister was calling "911." She was not approaching or threatening Smith. Cocroft Dep. 78:22-23.

17c. Smith continued to punish Cocroft for her speech and said, "I'll let you up if you stop saying something." Cocroft Dep. 80:3-4.

17d. Cocroft's face was bruised and her back was sore. Trial Tr. 139.

17e. Cocroft was kept on the ground for several minutes. Trial Tr. 138:10-11; *see also* Smith Dep. 51:17 ("three to four minutes"); 12/29/2007 Video at 7:02:10 to end.

18. As a result of this incident, Plaintiff was charged with disorderly conduct and resisting arrest. (Plaintiff's Complaint, ¶ 19.)

**Not disputed. However, Cocroft notes these additional facts:**

18a. As a result of Smith's attack, Cocroft was transported, in custody, to the UMass Memorial Hospital. Cocroft Dep. 94. She was then kept transported back to the police station for further custodial processing. Cocroft Dep. 99-113.

18b. Cocroft suffered abrasions to her face, an earring ripped out of her ear,

bleeding, a sore back, bruised fingers and shoulder. Cocroft Dep. 94-100.

18c. After Cocroft returned to Chicago she was still experiencing pain and was treated at Cook County Hospital for a shoulder sprain and torn rotator cuff. Cocroft Dep.103-05. She was also treated at the Jackson Health center in Chicago. Cocroft Dep.107.

18d. Cocroft experienced terror, physical pain, and suffering. She suffered abrasions to her face and the inability to breathe when a 215-pound man put his weight into her back for several minutes, an experience that in Cocroft's words "felt like an eternity." Cocroft Dep. 99-113.

19. After a jury trial, Plaintiff was convicted of resisting arrest. (Plaintiff's Complaint, ¶ 19.)

**Cocroft does not dispute that she was convicted of resisting arrest, but she disputes Smith's account of the legal impact of that conviction in this civil rights case.** *See* **Cocroft's Memorandum in Opposition to Summary Judgment**

20. Plaintiff's conviction was affirmed by the Appeals Court, <u>Commonwealth v. Cocroft,</u> No. 10-P-1875, 80 Mass. App. Ct. 1112 (Oct. 31, 2011) and further appellate review was denied by the Supreme Judicial Court. <u>Commonwealth v. Cocroft,</u> 461 Mass. 1104 (Dec. 21, 2011.)

**Not Disputed.**

Respectfully submitted,
WAKEELAH COCROFT

By her attorney,

/s/ Beverly B. Chorbajian

Beverly B. Chorbajian
BBO# 566893
390 Main St., Ste. 659
Worcester MA 01608
(508) 755-8072

Bchor.law@verizon.net

Dated: October 19, 2012