**(Leave to File Requested 3/7/14)**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WAKEELAH A. COCROFT, | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action |
| | ) | |
| JEREMY SMITH, | ) | 10-CV-40257 - TSH |
| Defendant | ) | |

## PLAINTIFF'S PRETRIAL MEMORANDUM

### 1. Concise Summary of Evidence Offered by the Plaintiff

This is a civil rights action brought by Wakeelah A. Cocroft, an African-American woman from Chicago, Illinois, against Jeremy Smith, a Worcester police officer. In December 2007, Cocroft visited family in Worcester for the holidays. At 7:00 a.m. on December 29, Cocroft and her sister, Clytheia Mwangi, were driving to Mwangi's workplace. Mwangi, the driver, was pulled over for speeding by Officer Smith. Cocroft was then subjected to an unlawful arrest accomplished with excessive force. Specifically, based on Cocroft's refusal to stop protesting Smith's treatment of Mwangi, Smith arrested Cocroft, pulled her from the car, wrestled her to the ground, and impeded her breathing for several minutes by putting his knee in her back.

The Plaintiff's evidence will show that Smith pulled Cocroft out of the car and threw her to the other side of the gas station's island. Cocroft's face scraped

across the cement as her body landed.  A short surveillance video shows Smith throwing her, pulling both of her hands behind her back to cuff her, and placing his knee on her back to hold her down.  Cocroft told Smith that she could not breathe, but he kept her in the same position for roughly five minutes. Cocroft suffered cuts and abrasions, and she may have damaged her rotator cuff because the defendant placed his bodyweight, about 215 pounds, on her shoulder.

The Plaintiff's evidence will show that Smith arrested Cocroft merely for talking back. Although she was later convicted of resisting that arrest, that conviction was possible only because Massachusetts law generally does not permit citizens to resist unlawful arrests. (The trial court and the appeals court in Cocroft's criminal case acknowledged that Cocroft might have been arrested based on her speech, rather than any disorderly conduct.).  The evidence will show that Cocroft's actions, even if sufficient to constitute "resistance" under Massachusetts law, were insufficient to justify Smith's violent response.

## A. __Federal Civil Rights Violations (Counts I and II)__

The Plaintiff and her sister will testify about the motor vehicle stop that took place on December 29, 2007. The jury will view a short surveillance video that depicts the interaction between Ms. Cocroft and Officer Smith. The basis for Plaintiff's Fourth and First Amendment claims is the manner of the arrest and the physical assault of the Plaintiff which ensued after she reprimanded Defendant Officer Smith for speaking harshly to the two women. The jury will have to decide whether Officer Smith's use of force was clearly in excess of "the degree of physical coercion typically attendant to an arrest". (*Graham* factors).  The

2

Plaintiff expects that Mr. Mitri, the gas station attendant will testify as a percipient witness to the event. The Plaintiff expects that Other officers will testify about their observations of the Plaintiff during her booking at the police station.

With regard to damages, Ms. Cocroft will testify about her pain and suffering at the time of the arrest, her medical treatment, the impact of the event on her emotional well-being and the time and inconvenience caused by the incident. In addition, Ms. Cocroft's sister will testify about her own observations of Ms. Cocroft's behavior, and the impact of this incident on their family. Ms. Cocroft's husband will also testify about the effect of this incident on his wife.

B. **The Plaintiff's State Law Claims:**

The Plaintiff's state law claims rest on the same evidence that the jury will hear on her federal claims.

2. **Statement of Facts by the Parties Not in Genuine Dispute:**

The Plaintiff will stipulate to the facts recited in the Defendant's Final Pretrial Memorandum as 1-6.

**Contested Facts the Plaintiff's Evidence will Show:**

Smith "screamed" at Mwangi. He thrust the LIDAR device into the window and screamed at her. He seemed very hostile, very aggressive. Cocroft advised Smith, "You don't have to speak to my sister in that manner." Smith then told Cocroft, "I will speak to you if I have something to say to you." Mwangi complied with Smith's request and provided her license and registration.

3

Before being pulled over by Officer Smith, the plaintiff and her sister knew they needed gas.  Mwangi and Cocroft agreed, because Mwangi was ordered by Smith to stay in the car, that Cocroft would purchase the gas. .     Cocroft entered the Mobil store and paid $5 for gas. Cocroft returned to the vehicle, placed the receipt in the car, proceeded to the pump, and put the nozzle into the tank. .  Officer Smith exited his cruiser and told the Plaintiff to get back in the vehicle.

Cocroft heard Smith screaming behind her.  Smith was screaming, "I thought I told you to stay in the car."   Cocroft responded, "I didn't know you were speaking to me," and "You have no right to speak to me in that manner." Defendant Smith "came toward [her] . . . in a very aggressive manner" saying the same thing. Smith's manner was "aggressive" and "hostile"; "he was screaming and yelling." Smith did not tell Cocroft "several times" to get back in the vehicle; he told her once. Cocroft said, "You don't have to talk to me in that manner. I have rights."

.     Smith responded, "If you say another word I'm going to arrest you." Cocroft repeated, "You don't have to talk to me in that manner."     Smith has testified that he arrested Cocroft based on "those words" she spoke after being told that she would be arrested if she said another word.  Cocroft was talking – not arguing.  The surveillance video refutes any assertion that Cocroft "moved to get into the car" only after Smith approached her.  After Smith is seen yelling and gesticulating toward Cocroft, he can be seen walking back to his cruiser.  At that moment, Cocroft opens the passenger door of Mwangi's vehicle, in compliance with his order to get in the car.

.     Cocroft turned to get back into her sister's vehicle to comply with Smith's command to get back in the car. Smith then turned around and moved quickly toward

4

Cocroft.  Smith did not tell Cocroft that she was under arrest. As Smith approached

Cocroft from the rear, she gave no indication that she was aware of his presence, let alone

disobeying a command. Cocroft had opened the passenger side door and had placed one

foot inside. Smith then pulled Cocroft from behind, pulling both of her shoulders.

Smith grabbed her from behind and Cocroft lost her balance. Smith pulled

Cocroft back and "threw [her] to the other side of the island on the ground. Cocroft's face

scraped against the cement. Smith pulled both of Cocroft's hands behind her back and

pushed his knee into her back. Smith then handcuffed Cocroft.      With Smith's knee in

her back, Cocroft could not breathe. Smith stayed on Cocroft's "back for several minutes

even after she told him she couldn't breathe. Cocroft did not engage in any action to

avoid being handcuffed.

While Smith was applying force to Cocroft, her sister was calling "911." She was

not approaching or threatening Smith. Smith continued to punish Cocroft for her speech

and said, "I'll let you up if you stop saying something." Cocroft's face was bruised and

her back was sore. Cocroft was kept on the ground for several minutes.

As a result of Smith's attack, Cocroft was transported, in custody, to the UMass

Memorial Hospital, kept under armed guard for treatment, and transported back to the

police station for further custodial processing. Cocroft experienced terror, physical pain,

and suffering.

### **3., 4.  Contested Issues of Fact and Legal Issues:**

1.      Whether Officer Smith used excessive force against the Plaintiff, in

        violation of  the 4th amendment? An excessive force claim under § 1983

5

requires the plaintiff "to show that 'the defendant employed force that was unreasonable under all the circumstances.'" Correia v. Feeney, 620 F.3d 9, 12 (1st Cir. 2010) (quoting Morelli v. Webster, 552 F.3d 12, 23 (1st Cir. 2009)). Relevant facts include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). There are factual disputes in this case, both as to the severity of the force Smith applied and as to whether that force was warranted. Further, Under Cocroft's version of the facts, "a reasonable officer should have known that the degree of force used was excessive." Morelli, 552 F.3d at 25.

2.      Whether Officer Smith arrested the Plaintiff without probable cause, in violation of the 4th Amendment? Under § 1983, "[an] unlawful arrest claim require[s] a showing that [the officer] lacked probable cause to arrest [the plaintiff]." Correia v. Feeney, 620 F.3d 9, 12 (1st Cir. 2010). The existence of probable cause is "an issue for the jury" if "'there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them.'" Nuon v. City of Lowell, 768 F. Supp. 2d 323, 330 (D. Mass. 2011) (quoting Maxwell v. City of Indianapolis, 998 F.2d 431, 434 (7th Cir. 1993)).

3.      Did Officer Smith arrest the Plaintiff in retaliation for her speech, in violation of the First Amendment? The Massachusetts disorderly conduct

statute, Massachusetts G.L. ch. 272, § 53, reaches only conduct proscribed in
"'subsections (a) and (c) of § 250.2 of the Model Penal Code.'" <u>Nuon</u>, 768 F.
Supp. 2d at 330.  Those subsections, in turn, require proof of "(a)
engage[ment] in fighting or threatening, or in violent or tumultuous behavior;
. . . or (c) creat[ing] a hazardous or physically offensive condition by any act
which serves no legitimate purpose of the actor.'" Id. (quoting Model Penal
Code § 250.2).  "federal and Massachusetts case law [has] clearly established
that neither speech nor expressive conduct can properly form the basis of an
arrest for disorderly conduct." <u>Nuon</u>, 768 F. Supp. 2d at 333. The Supreme
Court has held that "the freedom of individuals verbally to oppose or
challenge police action without thereby risking arrest is one of the principal
characteristics by which we distinguish a free nation from a police state."
<u>Houston v. Hill,</u> 482 U.S. 451, 461 (1987).   Smith himself has testified that,
when Cocroft continued to speak, he decided to arrest Cocroft based on,
"those words."   At worst, "those words" amounted to Cocroft, "expressing
[her] opinion regarding the actions of a public official." <u>Nuon,</u> 768 F. Supp.
2d at 333. They yielded "no probable cause that [Cocroft] was committing the
offense of disorderly conduct." Id. And thus, created liability for Plaintiff's
claims in this action.


4.  For each of Cocroft's remaining state law claims—including allegations of false

arrest (Count Four) and violations of the Massachusetts Civil Rights Act

7

(MCRA)— Cocroft's evidence (which Smith disputes ) shows that had no probable cause to arrest her.  Smith's lack of probable cause supports a state law claim for false arrest. <u>Gutierrez v. Massachusetts Bay Transp. Authority</u>, 772 N.E.2d 552, 564 (Mass. 2002).  The same is true of Cocroft's MCRA claim. A violation of the MCRA occurs when an officer deprives someone of a constitutional right through "threats, intimidation, or coercion." Mass. G.L. ch. 12, §§ 11H-I. The MCRA is "coextensive with 42 U.S.C. § 1983, except that the Federal statute requires State action whereas its State counterpart does not." <u>Bell v. Mazza</u>, 474 N.E.2d 1111, 1114 (Mass. 1985) (internal citations and quotation omitted). "A direct violation of civil rights is not, without a showing of coercive behavior, actionable." <u>Britton v. Maloney</u>, 901 F. Supp. 444, 453 (D. Mass. 1995). But "'[a]rrest and detention is 'intrinsically coercive' for MCRA purposes.'" <u>Sietins v. Joseph</u>, 238 F. Supp. 2d 366, 378 (D. Mass. 2003). The threat of arrest equally amounts to threats, intimidation, or coercion under the MCRA. <u>Tortora v. Inspector of Bldgs. of Tewksbury</u>, 668 N.E.2d 876, 878 (Mass. Ct. App. 1996).  Here, Smith, indeed, "threatened to arrest" Cocroft, and in fact arrested her, for talking back to him. That conduct clearly amounted to a violation of Cocroft's constitutional rights through threats, intimidation, and coercion.

5. Defendant Smith is not entitled to Qualified Immunity on the Plaintiff's Claim for Violation of her Fourth Amendment Right to be free from an unreasonable seizure of her person.  An objectively reasonable police officer in the position of Officer Smith would have known that the law in Massachusetts does not permit an arrest for disorderly conduct, based purely on speech. An arrest must be based on

probable cause. Beck v. Ohio, 379 U.S. 89, 91 (1964). An arrest without probable

cause violates the Fourth Amendment. Santiago v. Fenton, 891 F.2d 373, 388 (1st

Cir. 1989). Further, a prudent officer in the position of Officer Smith would have

known that arrest and imprisonment of the plaintiff would have violated her civil

rights. Wagenmann v. Adams, 829 F.2d 196 (1st Cir. 1987). "A reasonable

public official, particularly a police officer, is expected to know the law." Hall v.

Ochs, 817 F.2d 920, 924 (1st Cir. 1987).


Qualified Immunity as to the State Law Claims:

The qualified immunity standard for civil rights actions does not apply to the state tort

actions against the defendant. See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.

Ct. 2727, 73 L. Ed. 2d 396 (1982); Duarte v. Healy, 405 Mass. 43, 46-48, 49, 537 N.E.2d

1230 (1989) (Federal system of qualified immunity under 42 U.S.C. § 1983 [1982]

applied to actions under Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H and 11I, but

not to claims for other torts.) A showing that the defendant acted with actual malice

would thus also defeat his claim of qualified immunity. See Tobin v. Goggins, 17 Mass.

App. Ct. 996, 997, 459 N.E.2d 835 (1984) (citing Gildea in intentional interference case

against public official, plaintiff must also show "that the interference was done in bad

faith or maliciously"). With respect to Smith's behavior, Cocroft has advanced evidence

that he was hostile from the start and unduly violent to the finish. According to Cocroft's

previous factual submissions, Smith began yelling early during the encounter. Here, the

plaintiff has proffered evidence "from which a jury could infer that the defendant(s) acted

in bad faith or with malice," and consequently are not shielded from liability. <u>Nelson v. Salem State College</u>, 446 Mass. 525, 538, 845 N.E.2d 338 (2006).

**7. <u>Requested Amendments to the Pleadings</u> - None.**

**8. <u>Additional Matters:</u>**

    <u>Objections to Defendant's Exhibits:</u>

    The Plaintiff objects to Defendant's listed Exhibit 6 :The Municipal Police Training Committee defensive tactics training manual. This item was never provided to the Plaintiff.

**9. <u>Probable Length of Trial and Whether Jury or Nonjury</u>**

    Three days; jury.

**10. <u>Witness List</u>** (Previously filed - Document # 82 )

**11. <u>Proposed Exhibits List</u>** (Previously filed - Document # 82)

For the Plaintiff,
Wakeelah Cocroft,

<u>/s/ Beverly B. Chorbajian</u>

Beverly B. Chorbajian
BBO #  566893
390 Main Street,  Suite 659
Worcester, MA 01608
(508) 755-8072
Bchor.law@verizon.net

<u>/s/ Carlton E. Williams</u>
Carlton E. Williams
BBO No. 600973
American Civil Liberties Union of MA

Dated: March 7, 2014

211 Congress Street
Boston, Massachusetts 02110
Tel.: 617 482 3170 x 171
cwilliams@aclum.org

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via facsimile transmission and first-class mail to those indicated as non-registered participants on March 7, 2014.

*/s/ Beverly B. Chorbajian*

Beverly B. Chorbajian
BBO No. 566893
390 Main Street, Suite 659
Worcester, MA 01608
Tel. : (508) 755-8072
Email: Bchor.law@verizon.net

/s/ *Carlton E. Williams*

Carlton E. Williams
BBO No. 600973
American Civil Liberties Union of MA
211 Congress Street
Boston, Massachusetts 02110
Tel.: 617 482 3170 x 171
Email: cwilliams@aclum.org

11

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WAKEELAH A. COCROFT, | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action |
| | ) | |
| JEREMY SMITH, | ) | 10-CV-40257 - TSH |
| Defendant | ) | |

### CERTIFICATE OF CONSULTATION PURSUANT TO L.R. 7.1 (A)(2)

I, Beverly B. Chorbajian, attorney for the Plaintiff, Wakeelah Cocroft, hereby certify that, prior to filing the Plaintiff's MOTION TO ACCEPT LATE FILING of the Plaintiff's Final Pretrial Memorandum, conferred with counsel for the Defendant, Attorney Wendy Quinn via email and telephone on March 7, 2014.  She responded that she would  agree to allow additional time to file the Plaintiff's Final Pretrial Memorandum.

*/s/ Beverly B. Chorbajian*

Beverly B. Chorbajian
BBO #  566893
390 Main Street, Suite 659
Worcester, MA 01608
(508) 755-8072
Bchor.law@verizon.net