# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WAKEELAH A. COCROFT,<br>   Plaintiff, | )<br>)<br>)<br>) |  |
| v. | )<br>) | **CIVIL ACTION<br>NO. 10-40257-TSH** |
| JEREMY SMITH,<br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) |  |

## MEMORANDUM OF DECISION AND ORDER
### March 26, 2015

**HILLMAN, D.J.**

### Background

Wakeelah A. Cocroft ("Cocroft" or "Plaintiff") filed a federal civil rights claims against Worcester Policer Officer Jereremy Smith ("Officer Smith" or "Defendant") under 42 U.S.C. §1983 for violation of her First and Fourth Amendment rights. Cocroft also filed Massachusetts state law claims against Officer Smith for violation of the Massachusetts Civil Rights Act ("MCRA"), Mass.Gen.L. ch. 12, §§11-H-I and tort law claims for assault and battery and false arrest. With respect to Cocroft's Section 1983 claims, the jury found that Officer Smith unlawfully seized Cocroft, but that he did not use excessive force against her or violate her First Amendment rights. *Jury Verdict Form* (Docket No. 112). As to her Massachusetts state law claims, the jury found that Officer Smith violated Cocroft's rights

under the MCRA, but did not commit an assault and battery on her.[1] This Memorandum of Decision and Order addreesses Defendant Jeremy Smith's Renewed (Post-Judgment) Motion For Judgment As A Matter Of Law, And, In The Alternative For A New Trial (Docket No. 125). For the reasons set forth below, that motion is ***denied***.

## Facts

The following factual account is stated in a light most favorable to the verdict. *See Howes v. Hitchcock*, 66 F.Supp.2d 203, 208 (D.Mass. 1999).

On December 29, 2008, early in the morning, Cocroft was a passenger in an automobile operated by her sister, Clytheia Mwangi ("Mwangi"), which was speeding on Park Avenue in Worcester, Massachusetts. Officer Smith stopped Mwangi's car as she turned into a gas station. As Mwangi was preparing to get out of the car to get gas, she heard the officer yell at her to get back in the car-- she complied. Officer Smith approached the vehicle and began to yell at Mwangi asking her if she knew how fast she had been going. He then thrust the radar gun up against the window. Cocroft told Officer Smith that he could not speak to Mwangi like that. Officer Smith responded that he would speak with her if he had anything to say to her.

Officer Smith obtained Mwangi's license and registration and returned to his marked police cruiser. Officer Smith ordered Mwangi to stay in the car. When Officer Smith went back to his cruiser to write the citation, Cocroft exited the vehicle went into the Mobil store and paid $5.00 for gas. She then returned to the car, put the receipt for the payment into the car and went to the gas pump and removed the nozzle. Before she could begin pumping the gas, she heard Officer Smith yelling that he told her to stay in the car. Cocroft put the nozzle back in

---

[1] Cocroft agreed that her false arrest claim was subsumed within her Section 1983 claim for unlawful seizure and, therefore, as to that claim, the Court allowed Defendant's Motion For Judgment As A Matter Of Law (At Close Of Plaintiff's Evidence)(Docket No. 105).

the pump and told Officer Smith that she thought he was talking to her sister. Officer Smith approached Cocroft in an angry manner; he was yelling that he told her to get in the car. Cocroft again responded that she did not know he was speaking to her and further stated that Officer Smith had no right to speak to her in that manner. Officer Smith then told Cocroft if she said anything else, he would arrest her. Officer Smith turned toward his vehicle and Cocroft went to get back inside the car.

As Cocroft opened the door to get back inside the car, Officer Smith grabbed her from behind and pulled her away. Cocroft lost her balance. Officer Smith pulled her back and threw her forcefully to the ground and scraped her face against the cement. Cocroft repeatedly asked Officer Smith what he was doing. Officer Smith placed his knee on Cocroft's back, pulled her arms behind her back and placed handcuffs on her wrists. Cocroft felt pain in her arm when he pulled it behind her. Cocroft told her sister to call the police. Officer Smith kept his knee on Cocroft's back for several minutes. Officer Smith got off of Cocroft's back when other officers arrived, but he left her on the ground, which was dirty and wet. When a second officer arrived, Officer Smith pulled her up off the ground. Cocroft heard Officer Smith tell one of the other officers (Officer Thomas Dowd) that she had started yapping about her rights, so he arrested her. Cocroft was put in a patrol wagon and taken to the Worcester Police Station.

Cocroft suffered abrasions to her face, had an earring ripped out of her ear, bleeding, a sore back, and scrapes on her fingers. Later that night, she started experiencing pain in her shoulder. Cocroft continued to have pain in the shoulder when she returned to her home in Chicago. She went for treatment and her arm was temporarily placed in an immobilizer and she was given pain killers.

Cocroft was charged with disorderly conduct and resisting arrest. After a jury trial, she was convicted of resisting arrest. The trial judge granted Cocroft's motion for a directed verdict on the disorderly conduct charge. Her conviction was affirmed by the Massachusetts Appeals Court ("MAC"); the Massachusetts Supreme Judicial Court ("SJC") denied further appellate review of the resisting arrest conviction.

The deposition testimony of Jacob Mitri, the owner of the gas station was read into evidence. He testified that at the time of the incident, the station was only open to sell gas. He further testified that it was cold out so the door to the station was closed. Cocroft came inside at one point and paid for gas and he turned on the pump. Sometime thereafter, he heard a woman screaming. He went outside and observed Cocroft on the ground with a police officer attempting to get her hands behind her back. At the time he heard the screaming, Cocroft was already on the ground.

Officer Smith testified that he believed that Cocroft had committed the crimes of disorderly conduct and interfering with a police officer. When asked what Cocroft did which rose to the level of disorderly conduct, Officer Smith testified that: Cocroft exited the vehicle and proceeded to pump gas after he had told Mwangi to remain in the car; he told her multiple times to get back into the car, but she refused; and she kept arguing with him and continued to challenge everything he had to say. He felt that her conduct was causing a disturbance in the area. Officer Smith also felt that Cocroft interfered with his duties as a police officer because her actions forced him to have to stop writing-up Mwangi's traffic citation and he could not finish writing it until after he had arrested her.

## Discussion

Officer Smith has filed a renewed motion for judgment as a matter of law. In the alternative, he seeks a new trial. Officer Smith argues that the verdict and damage award was inconsistent and not supported by legally sufficient evidence. Additionally, he argues that he was entitled to qualified immunity on both the federal and state civil rights counts. In the alternative, he argues that the verdict was against the clear weight of the evidence and, therefore, he is entitled to a new trial.

### *Standard of Review*

> A party seeking to overturn a jury verdict faces an uphill battle. 'Courts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party.' [The Court's] review 'is weighted toward preservation of the jury verdict.'
> A district court should grant a motion for a new trial only if 'the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice.'

*Estate of Berganzo-Colon ex rel. Berganzo v. Ambush,* 704 F.3d 33, 38 (1st Cir. 2013)(internal citations and citations to quoted cases omitted).

### *Whether Officer Smith is Entitled to a Directed Verdict*

Officer Smith asserts that he is entitled to a directed verdict because the jury's findings that he unlawfully seized Cocroft and violated her rights under the MCRA are inconsistent with its finding that he did not violate her First Amendment rights, and, in any event, he is entitled to qualified immunity on these claims. He also asserts that Cocroft failed to establish an MCRA violation, as a matter of law, and that the damages award should be vacated.

*Whether the Jury Verdict Was Inconsistent*

Cocroft asserted that Officer Smith violated her constitutional rights by arresting her for exercising her First Amendment right to freedom of speech *and* by arresting her without probable cause. More specifically, Cocroft asserts that Officer Smith violated her First and Fourth Amendment rights by arresting her in retaliation for exercising her right to speak. *In the alternative*, she asserted that her arrest violated the Fourth Amendment because Officer Smith lacked probable cause to believe she had committed a crime.

A warrantless arrest must be supported by probable cause. Probable cause exists where the facts and circumstances known to a police officer at the time "would enable a reasonably prudent person to believe that the arrestee has committed a crime (even if it differs from the one named by police during the arrest or booking)." *Robinson v. Cook*, 706 F.3d 25, 33 (1st Cir.), *cert denied,* — U.S.—, 133 S.Ct. 2831 (2013). Officer Smith arrested Cocroft for being a disorderly person in violation of Mass.Gen.L. ch. 272,§53. The Supreme Judicial Court ("SJC") looks to the Model Penal Code for purposes of defining what constitutes "disorderly conduct." *See Nuon v. City of Lowell,* 768 F. Supp 2d 323, 330 (D. Mass. 2011).

> The relevant portion of the Model Penal Code defines a disorderly person as one who 'with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof ... (a) engages in fighting or threatening, or in violent or tumultuous behavior; ... or (c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.' The Model Penal Code further provides that ' "[p]ublic" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are ... any neighborhood.'
> … "'f]ighting" is descriptive of conduct which by its very nature involves the use of physical force or violence or any threat to use such force or violence ...' … 'Tumultuous behavior' includes 'riotous commotion and excessively unreasonable noise so as to constitute a public nuisance.' It entails acts other than speech; 'neither a provocative nor a foul mouth transgresses the

statute.' Expressive conduct, even of a coarse and vulgar nature, cannot be punished as a disorderly offense.

Two further legal points bear mention. First, the SJC has clearly and unequivocally rejected … the Model Penal Code [to the extent which it provides that] a person is guilty of disorderly conduct if he 'makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present.' Second, 'tumultuous behavior' is more than merely 'unreasonable noise.' … 'Under Massachusetts law, speech alone does not constitute 'disorderly' conduct.'

*Id.,* at 331-32.

The jury found that Officer Smith did not violate Cocroft's First Amendment rights, that is, he did not arrest her because of her speech. Put another way, he did not arrest her for "mouthing" off to him. At the same time, the jury found that he arrested her unlawfully and therefore, necessarily found that he arrested her without probable cause. Officer Smith testified that he arrested Cocroft for disorderly conduct because she exited the vehicle and proceeded to pump gas after he had told Mwangi that she should remain in the car. He had to tell Cocroft multiple times to get back into the vehicle, and she refused and kept arguing with him and continued to challenge everything he had to say. He felt that her conduct was causing a disturbance in the area. However, Jacob Mitri, the owner of the gas station, stated that at the point that he heard screaming, Cocroft was already on the ground and Officer Smith was attempting to handcuff her. Even crediting Officer Smith's version of events, Cocroft's conduct falls far short of actions which would constitute disorderly conduct under Massachusetts law.

Officer Smith also argues that he had probable cause to arrest Cocroft for interfering with his duties as a police officer. The Massachusetts obstruction of justice statute, Mass.Gen.L. ch. 268 §13B ("Section 13B"), effectively prohibits intimidation of witnesses, jurors or persons providing information relevant to a criminal proceeding. Clearly, Officer

7

Smith would not have had grounds to arrest Cocroft for violating Section 13B. There is a suggestion that Massachusetts law recognizes a common-law crime of interference with the duties of a police officer. However, after an exhaustive search, the only case which the Court could find on this alleged common-law crime is the one pointed out in Cocroft's response, *Commonwealth v. Shave,* 81 Mass.App,Ct. 1131, 965 N.E.2d 227 (2012)(unreported), in which the court, in passing, references the common-law offense of "intimidating, hindering, or interrupting an officer engaged in the lawful performance of his duty." *Id*; *but see Commonwealth v. Devlin*, 366 Mass. 132, 314 N.E.2d 897 (1974)(SJC stated that while defendant's actions of wiping perpetrator's fingerprints off knife may have constituted what in some jurisdictions is crime of "obstruction of justice," it need not consider whether such a common-law crime exists in Massachusetts, because defendant was not so charged). The MAC did not discuss the necessary intent required to establish the offense. However, in order to establish a violation of the so-called witness intimidation statute, Section 13B, "there must be proof of a defendant's specific intent to 'impede, obstruct, delay, harm, punish, or otherwise interfered thereby' with a criminal investigation." *Commonwealth v. Morse*, 468 Mass. 360, 372, 10 N.E.3d 1109 (2014)(quoting Mass.Gen.L.ch. 268, 13B(1)(c)(v)). Likewise, if Massachusetts were to recognize the common-law offense of obstructing a police officer in the performance of his duty, a conviction would require proof that the alleged violator acted with the specific intent to intimidate, hinder or interrupt the officer. There is simply no evidence on the record which would support a finding that Officer Smith had probable cause to believe that Cocroft acted to interfere with his performance of his duties.

Words expressed by a colleague analyzing the arrest of a defendant in another action aptly sum up the arrest of Cocroft in this case: "As is often said, police officers necessarily

8

make quick decisions in the field; it is inevitable that even good officers will make mistakes and have lapses in judgment. Not every police mistake rises to the level of a constitutional violation. Nonetheless, it is difficult to believe that a reasonable officer would have concluded (1) that there was probable cause to believe that [Cocroft] had committed a crime, and (2) that an arrest was an appropriate response." *Shea v. Porter*, No. CIV.A. 08-12148-FDS, 2014 WL 5500661, at *18 (D. Mass. Oct. 31, 2014) *reconsideration denied,* No. CIV.A. 08-12148-FDS, 2014 WL 6687119 (D. Mass. Nov. 26, 2014). I find that there is nothing inherently inconsistent about the jury's verdict and therefore, Officer Smith's motion for a directed verdict on this issue is denied.

*Whether Officer Smith Is Entitled To Qualified Immunity*

The doctrine of qualified immunity protects public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Under the two-part test adopted by the First Circuit, the relevant inquiries are (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *See Maldonado v. Fontanes,* 568 F.3d 263, 269 (1st Cir. 2009). For purposes of the second prong, whether the right in question was "clearly established" depends on "(a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right." *Mlodzinski v. Lewis,* 648 F.3d 24, 32–33 (1st Cir. 2011).

Officer Smith argues that he is entitled to qualified immunity because the right to be free from a retaliatory arrest was not clearly established at the time. It is true that Cocroft asserted that Officer Smith arrested her in retaliation for exercising her First Amendment rights. On this issue, Officer Smith may very well be correct that it is an unsettled question of law whether a retaliatory arrest otherwise supported by probable cause is unlawful. However, the Court need not resolve this question because the jury found for Officer Smith on Cocroft's retaliatory arrest claim. Therefore, the Court will focus on Officer Smith's argument that he is entitled to qualified immunity on Cocroft's claim that her arrest was not supported by probable cause. Officer Smith argues that he is entitled to qualified immunity on this claim because a reasonable officer in his position would have believed that probable cause existed to believe that Cocroft committed the crime with which she was charged-- disorderly conduct, or that she had committed the crime of interfering with a police officer in the exercise of his duties.

> The doctrine of qualified immunity protects a state actor from liability for damages under section 1983 as long as his conduct did not violate clearly established constitutional or federal statutory rights. The official's actions are gauged by a standard of objective reasonableness.
> To obtain the benefit of qualified immunity, a police officer need not follow an unquestionably constitutional path. The case at hand exemplifies this point; where, as here, a section 1983 action rests on a claim of false arrest, the qualified immunity standard is satisfied 'so long as the presence of probable cause is at least arguable.'

*Moses v. Mele*, 711 F.3d 213, 216 (1st Cir. 2013). "The qualified immunity standard is not a stringent test, and gives ample room for mistaken judgments by protecting all but the plainly incompetent and those who knowingly violate the law. This protection is afforded to police officers so that they need not always err on the side of caution from fear of being sued. Thus, [Officer Smith] is entitled to qualified immunity so long as the presence of probable cause to

arrest [Cocroft] for [a crime] is at least arguable." *Nuon*, 768 F. Supp. 2d at 333 (internal citations omitted).

In the preceding section, I found that there are no grounds to disturb the jury's finding that Cocroft's arrest was unlawful, *i.e.,* that Officer Smith lacked probable cause to arrest her for committing a crime. I find that the presence of probable cause for the arrest is not arguable. Furthermore, a reasonable officer in Officer Smith's position would have known that his conduct violated Cocroft's rights. Accordingly, Officer Smith is not entitled to qualified immunity.

*Whether Cocroft Is Entitled To Damages Against Officer Smith In His Personal Capacity*

Officer Smith asserts that Cocroft is not entitled to damages against him in his personal capacity because Cocroft sued him only in his official capacity. This contention requires little discussion. The First Circuit has adopted a "course of proceedings" approach to determining whether a suit is an individual or official capacity suit. *Powell v. Alexander*, 391 F.3d 1, 22 (1st Cir. 2004). Under this test, rather than relying solely on the face of the complaint, the court looks to the substance of the pleadings and the course of the proceedings. The court considers factors such as the nature of the plaintiff's claims, whether compensatory and/or punitive damages have been requested, the nature of defenses raised, including the defense of qualified immunity, and the stage of the litigation. *Id.* In this case, the complaint does not specify whether Officer Smith was being sued in his individual or official capacity. The factual allegations against Officer Smith reference actions taken by him in his capacity as a police officer and Cocroft made no demand for punitive damages. Nonetheless, Officer Smith filed a summary judgment motion asserting qualified immunity as a defense. The issue was briefed by both parties and this Court issued an Order finding that at that stage of the proceedings, he

11

was not entitled to qualified immunity. Clearly, Officer Smith was operating under the assumption that he was being sued individually. He prepared for and proceeded to trial without suggesting otherwise. Under these circumstances, I find that the claims against Officer Smith were properly treated as claims against him in his individual capacity.

*The MCRA Claim*

The jury found for Cocroft on her MCRA claim. In order to prove her claim, she had to establish that her exercise or enjoyment of rights secured by the constitution or laws of either the United States or Massachusetts has been interfered with, or attempted to be interfered with, by threats, intimidation or coercion. *See* Mass. Gen. L. ch. 12, § 11I. The MCRA is the state "counterpart" to Section 1983 and, in general, is coextensive therewith. The primary difference is that to succeed on an MCRA claim, a plaintiff must also show that the violation of rights occurred "by threats, intimidation or coercion." *Bally v. Northeastern Univ.,* 403 Mass. 713, 532 N.E.2d 49, 52 (1989). "A 'threat' means the 'intentional exertion of pressure to make another fearful or apprehensive of injury or harm.' " *Goddard v. Kelley,* 629 F.Supp.2d 115, 128 (D.Mass. 2009)(citation to quoted case omitted). "Intimidation" means putting a person in fear for the purpose of compelling or deterring his or her conduct. *Id.* "Coercion" means application of physical or moral force to another to constrain him to do against his will something he would not otherwise do. *Id.* The direct violation of a constitutional right does not establish a MCRA violation because "it is not an attempt to force someone to do something the person is not lawfully required to do." *Columbus v. Biggio,* 76 F.Supp.2d 43, 54 (D.Mass. 1999).

An arrest alone, while in and of itself intrinsically coercive, is not sufficient to establish a violation of the MCRA. Thus, in order to prevail on her MCRA claim Cocroft had to prove

12

that Officer Smith's conduct "was intended to coerce [her] into refraining from the exercise of a right or privilege secured by law." *Farrah ex rel. Estate of Santana v. Gondella*, 725 F.Supp.2d 238, 249 (D.Mass. 2010). Cocroft asserts that Officer Smith's conduct violated the MCRA because he sought to constrain her, through threats or intimidation, from speaking-- a right to which she was lawfully entitled. The jury found that while Officer Smith's arrest of Cocroft was unlawful. It also found that he did not violate her First Amendment right to free speech. Nevertheless, taking the facts in a light most favorable to the verdict, the jury could have found that Officer Smith approached Cocroft in an angry manner while yelling at her that he would arrest her if she said anything else. Thus, the jury could have found that he threatened to arrest her based on her speech, even though such an arrest would be improper. Put another way, the jury could have found that Officer Smith attempted to coerce Cocroft into refraining from exercising her lawful right. Therefore, Officer Smith's motion for directed verdict on the MCRA claim is denied.

### *Whether Cocroft Failed To Establish Her Damages*

Officer Smith asserts that the jury's award of $15,000 was inconsistent and not supported by the evidence at trial because she failed to prove that she suffered any actual injury. More specifically, he argues that because Cocroft was lawfully arrested (for resisting arrest), any damages she suffered as the result of the jury's finding that the initial arrest was unlawful is limited to the seconds between that unlawful arrest and her conduct which led to the lawful charge of resisting arrest. He further argues that she did not offer any expert testimony regarding any damages suffered during this brief period.

The fact that Cocroft did not offer expert testimony on the issue is not fatal to her claim for damages. *See Chamberlin v, Town of Stoughton*, 601 F.3d 25 (2010)(no *per* se rule requiring

13

expert testimony to establish emotional distress damages in Section 1983 case). However, Officer Smith does raises a legitimate argument concerning the amount of damages awarded. As he points out, Cocroft was lawfully arrested for the charge of resisting arrest and therefore, she is only entitled to compensated for injuries, including emotional injury, sustained during the period between her unlawful arrest, and the point at which she engaged in conduct which led to her lawful arrest. The jury heard the testimony of Cocroft and her husband and viewed the video (which, because of its quality, was of limited assistance). The jury determined that Cocroft should be awarded $15,000 for the emotional distress and possible physical pain suffered by her during the relevant period before her lawful arrest. While this is a close call, I find that they jury's award was within a reasonable range.

### *Whether Officer Smith Is Entitled To A New Trial*

Officer Smith asserts that the Court erred by: (1) admitting evidence that at the state criminal case, the court entered a directed finding of not guilty as to the disorderly conduct charge against Cocroft; (2) omitting his request for jury instructions regarding probable cause and interference with a police officer; and (3) including only a single line on the verdict form for the jury to assess damages if it found for Cocroft on any claim, rather than providing separate lines for the jury to assess independent damages on the Section 1983 and MCRA claims. For the reasons set forth in *Plaintiff Wakeelah Cocroft's Motion In Opposition To Defendant's Renewed Motion For Judgment As A Matter Of Law* (Docket No. 128), I find that Officer Smith is not entitled to a new trial. I add only the following clarification. While the jury found that Officer Smith violated Cocroft's rights under the MCRA and Section 1983, she is entitled to but a single recovery (she does not argue to the contrary). Prejudgment interest shall be applied to the entire recovery calculated in accordance with federal law.

**Conclusion**

It is hereby Ordered that:

Defendant Jeremy Smith's Renewed (Post-Judgment) Motion For Judgment As A Matter Of Law, And, In The Alternative For A New Trial (Docket No. 125) is ***denied***.

/s/ Timothy S. Hillman
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**